# United States District Court
# District of Massachusetts

**WILL QUARTERMAN and**
**STATE STREET ENTERTAINMENT,**
PLAINTIFFS

v.                    **CIVIL ACTION NO. 07-30185**

**CITY OF SPRINGFIELD and**
**PETER SYGNATOR,**
DEFENDANTS

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

The defendants hereby submit the following Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

In the complaint the plaintiffs assert liability of both defendants upon the following claims:

| | |
|---|---|
| Count I | M.G.L. c. 272 § 98 claim for unlawful discrimination by denying the Plaintiffs full and equal accommodations, advantages, facilities, and privileges in a place of public accommodation. |
| Count II | Dismissed by agreement of the parties. See Joint Pre Trial Memorandum. |
| Count III | M.G.L. c. 151B claim for unlawful discrimination based on race or color. |
| Count IV | 42 U.S.C. § 1983 claims for deprivation of rights, privileges or immunities under the Constitution and laws of the United States. |
| Count V | M.G.L. c. 12 § 11I claim for interference with Plaintiffs' rights secured by the Constitution of the Commonwealth of Massachusetts and the Constitution of the United States, by threats, intimidation and coercion. |

62279

Count VI       Dismissed by agreement of the parties. See Joint Pretrial Memorandum.

Count VII      42 U.S.C. § 1981 claim for denial of Plaintiffs' full and equal benefits of the laws, rights and proceedings guaranteed to all citizens.

Count VIII     Violation of the Due Process Clause of the 14th Amendment of the United States Constitution for abuse of discretion by Defendants' which amounted to violation of rights guaranteed under the Constitution of the United States.

## Summary Judgment Standard.

Summary judgment should be granted if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The court must review the facts in the light most favorable to the non-moving party. *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 258 (1st Cir. 1994). A party who would not have the burden of persuasion at trial can prevail on summary judgment by introducing appropriate material demonstrating that proof of an essential element of the burdened party's claim "is unlikely to be forthcoming" at trial. *Kourovacilis v. General Motors Corp.*, 410 Mass. 706, 714 (1991); *Flesner v. Technical Communications Corp.*, 410 Mass. 805,809. If the moving party establishes the absence of a triable issue and is entitled to judgment based on those facts, the burden shifts to the opposing party who must allege specific facts which would establish the existence of a genuine issue of material fact. *Pederson v. Time, Inc.,* 404 Mass 14, 16-17 (1989). The non-moving party's failure to prove an essential element of its case "renders all other facts immaterial" and mandates summary judgment in favor of the moving party. *Kourouviclis,* 410 Mass at 716.

<u>**Argument**</u>

***1. As to all counts, Plaintiff Will Quarterman lacks standing to bring claim against Defendants for discrimination.***

The Plaintiff Will Quarterman, as an individual and as a shareholder of SSE, does not have standing to bring claims on behalf of SSE.  SSE has asserted its own claims as it was the entity which held the subject license.   It is well settled law that:

> [A]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name … even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock.  This standing rule applies even when there is only one shareholder in a corporation.

*Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005) (internal quotation marks omitted, quoting *In re Dein Host, Inc.*, 835 F.2d 402, 406 (1st Cir. 1987)). (*Diva's* is a case in which the owner and president of corporation did not have standing to raise First and Fourth Amendment claims because she failed to allege any injury flowing to her, separate from corporate injuries). In a case in which the pleadings claimed the same actions and damages for both the individual and the corporate plaintiff, like the case at bar, the Court of Appeals for the First Circuit emphasized the lack of standing for the individual, ruling: "[N]ot only have [the shareholders] sued to redress an injury to the corporation, but *the corporation itself has sued, in the same complaint and on the same theories for the same harm*. In such circumstances, section 1983 affords no right of action to the individual shareholders" (emphasis supplied). *Pagan v. Calderon*, 448 F.3d 16, 29 (1st Cir. 2006).

"A federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims, regardless of whether the litigants have raised the issue of standing." *Pagan*, 448 F.3d at 26 (1st Cir. 2006)

citing *Orr v. Orr,* 440 U.S. 268, 271 (1979); *Juidice v. Vail,* 430 U.S. 327, 331 (1977);

*see also  Warth v. Seldin,* 422 U.S. 490, 498 (1975) (explaining that standing is a

threshold issue in every federal case).  "The standing inquiry is both plaintiff-specific and

claim-specific.  Thus, a reviewing court must determine whether each particular plaintiff

is entitled to have a federal court adjudicate each particular claim that he asserts." *Pagan*

448 F.3d at 26 (1st Cir. 2006) citing *Allen v. Wright,* 468 U.S. 737, 752 (1984);  *Donahue*

*v. City of Boston,* 304 F.3d 110, 116 (1st Cir.2002).

 Mr. Quarterman's individual claims of damages including loss of earning

capacity, loss of income, and emotional distress damages are derivative of SSE's failure

to receive approval of its license transfer request.  "The fact that the complaint contains a

demand for emotional distress damages … is insufficient to confer individual standing on

any of the stockholders. After all, the complaint does not suggest that this injury is

anything but derivative of…[SSE's] failure to receive the….[license transfer]. It is,

therefore, squarely within the proscription of the shareholder standing rule." *Pagan* 448

F.3d at 29 (1st Cir. 2006)  *See  Bellows v. Amoco Oil Co.,* 118 F.3d 268, 277 n. 27 (5th

Cir.1997) (holding that shareholder had no individual standing to sue for emotional

distress when that distress was simply a consequence of the corporation's direct injury).

Plaintiff Quarterman lacks standing in this case and summary judgment should be

entered for the all Defendants on all counts brought by Mr. Quarterman.

**2. State Street Entertainment, Inc.'s (SSE) claims under Massachusetts law are barred by its failure to exhaust the administrative remedy mandated in MGL c. 151B § 5.**

Plaintiff, SSE, lacks standing on claims made under *M.G.L.* c. 151B (Count III),

*M.G.L.* c. 272 § 98 (Count I), and *M.G.L.* c. 12 § 11I (Count V), because it failed to file

an administrative complaint with the Massachusetts Commission Against Discrimination

(MCAD) within 300 days of the alleged act of discrimination in violation of *M.G.L.* c. 151B § 5.  "Any person claiming to be aggrieved by an alleged unlawful practice or alleged violation … may, by himself or his attorney, make, sign and file with the commission a verified complaint in writing … Any complaint filed pursuant to this section must be so filed within 300 days after the alleged act of discrimination." *M.G.L.* c. 151B § 5.  Pursuant to M.G.L. c. 151B § 1 "The term 'person' includes … *corporations* …." (emphasis supplied).

   M.G.L. c. 12, §§ 11H and 11I, do not create an independent right to pursue an alleged wrong which could have been the subject of investigation and possible vindication under M.G.L. c. 151B, were it not for SSE's delay.  *See Mouradian v. General Elec. Co.,* 23 Mass. App. Ct. 538 (1987).  *See also Felinska v. New England Teamsters and Trucking Pension Fund*, 855 F. Supp. 474 (D. Mass 1994).

   *M.G.L.* c. 151B § 5, first paragraph, expressly references *M.G.L.* c. 272 § 98 and therefore subjects any claims made under that statute subject to the 300-day requirement: "Any person claiming to be aggrieved by an alleged unlawful practice or alleged violation of …ninety-eight and … of chapter two hundred and seventy-two may, by himself or his attorney, make, sign and file with the commission a verified complaint in writing.."[1]

---

[1] Reliance upon *M.G.L.* c. 272 § 98 in this case seems misplaced.  *M.G.L.* c. 272 § 98 prohibits "… discrimination or restriction on account of race, color … relative to the admission of any person to, or his treatment in any place of public accommodation, resort or amusement…"  In the complaint neither plaintiff alleges they or their agents were denied admission or access to any place of public accommodation including Springfield City Hall and its hearing rooms or public offices.  Under the statute the plaintiffs must identify a "place" of public accommodation to which they were denied or restricted from entering.  *See U.S. Jaycees v. Mass. Comm. Against Discrimination,* 391 Mass 594, 604 (1984) ("…[A]ll of the specifically-enumerated examples of places of public

Therefore summary judgment must enter on behalf of the defendants against SSE as to counts I, III, and V of the complaint because SSE failed to file an administrative complaint with MCAD within 300 days of the alleged act of discrimination as required under *M.G.L.* c. 151B, § 5.

### 3. As to Count IV (42 U.S.C. § 1983 Claim for denial of procedural due process), the plaintiffs have failed to claim there were inadequate state remedies available to address the alleged deprivations.

Licensees who request to transfer an existing license from one location to another must apply to the local licensing authorities. See *M.G.L.* c. 138 § 23, par 8. If the local licensing authorities, in this case the Board, refuse to grant an application for a transfer of location, the applicant may appeal to the Alcoholic Beverage Control Commission ("ABCC") pursuant to *M.G.L.* c. 138 § 67. See also *M.G.L.* c. 138 § 23, par 8. In this case SSE appealed the Board's decision to deny the transfer to the ABCC. After a hearing before ABCC, the ABCC affirmed the Board's decision and denied SSE's appeal. As reasons the ABCC cited the Board's Findings of the Board License Commissioners. The plaintiffs failed challenge the ABCC's denial by filing a civil action in the nature of certiorari the Massachusetts supreme judicial or superior courts. *See Donovan v. City of Woburn*, 65 Mass. App. Ct. 375, (2006); *See also M.G.L. c.* 249, § 4. *See also Ballarin, Inc. v. Licensing Board of Boston,* 49 Mass. App. Ct. 506, 510-511 (2000). Licensees challenging the local licensing board and the ABCC's decision to deny a license transfer under State law must proceed by way of an action in the nature of certiorari. *Donovan v. City of Woburn*, 65 Mass. App. Ct. 375, (2006). "Certiorari

---

accommodation (an inn, tavern, gas station, etc.), following the general definition in G.L. c. 272, § 92A, do come within the commonly understood definition of a 'place' cited above.")

actions must be commenced within sixty days after the conclusion of the proceeding being challenged. *M.G.L. c. 249, § 4.*  Failure to do so is such a 'serious misstep' that such an action must be dismissed when not timely filed, even if the defendants fail to plead the statute of limitations as an affirmative defense. *McLellan v. Commissioner of Correction,* 29 Mass.App.Ct. at 933, 935 (1990)." *Pidge v. Superintendent, Mass. Correctional Inst, Cedar Junction*, 32 Mass. App. Ct. 14, 17-18 (1992).

"A complaint in the nature of certiorari (G.L. c. 249, § 4), was, in the absence of a path prescribed by statute, the appropriate avenue of review from a discretionary decision of a local licensing authority."  *See Ballarin, Inc. v. Licensing Board of Boston,* 49 Mass. App. Ct. 506, 510-511 (2000).  The court in *Ballarin, Inc.* 49 Mass. App. Ct. at 511-512 (2000) held:

> The statute authorizing the issuance of liquor licenses, [M.G.L. c. 138, § 23] speaks in terms of serving "the public need and in such a manner as to protect the common good and, to that end, to provide, in the opinion of the licensing authorities, an adequate number of places at which the public may obtain, in the manner and for the kind of use indicated, the different sorts of beverages for the sale of which provision is made." …. Consideration of the number of existing dispensaries in a locality is a proper concern, as are the views of the inhabitants of the locality in which a license is sought. (internal citations omitted.)

An actionable 42 *U.S.C* section 1983 claim must allege facts sufficient to support a determination "(i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." *Rumford Pharmacy Inc., v. City of East Providence,* 970 F.2d 996 (1992); citing *Chongris v. Board of Appeals,* 811 F.2d 36, 40 (1st Cir.), *cert. denied,* 483 U.S. 1021 (1987).  A procedural due process claim must also

allege "that [the plaintiff] was deprived of constitutionally protected property because of defendants' actions, and that the deprivation occurred without due process of law." *Rumford Pharmacy Inc.,* 970 F.2d at 999 (1992), *citing* Roy v. City of Augusta, Me., 712 F.2d 1517, 1522 (1st Cir.1983). *Rumford Pharmacy,* is a United States Court of Appeals, First Circuit decision regarding a drug store's action against the City of East Providence Rhode Island, its city council and others seeking damages for alleged civil rights violations relating to denial of its application for approval of liquor license transfer. The Court of Appeals held the drug store failed to state claim for violation of its procedural due process rights, absent an allegation that available remedies under Rhode Island law were inadequate to address deprivation. *Id.*

In this case, the plaintiffs assert violations of their due process rights under the Fourteenth Amendment. *See* count VIII of the Complaint. Assuming, *arguendo,* that the defendants' actions deprived the plaintiffs of a cognizable property interest in the SSE liquor license[2], the complaint nevertheless fails to *allege* that available remedies under Massachusetts law were inadequate to redress any alleged deprivation. To the contrary the plaintiffs had remedies available to them including an administrative appeal to the ABCC and judicial review before the Massachusetts superior or supreme judicial courts. *See, Donovan v. City of Woburn*, 65 Mass. App. Ct. 375, (2006); See also *M.G.L. c.* 249, § 4. This step is of critical importance to a procedural due process claim. *Rumford Pharmacy,* 970 F.2d at 999.

---

[2] It can be argued that there is no property interest in any liquor license in Massachusetts. Pursuant to M.G.L. c. 138 Sec 23, second paragraph "no holder of such a license or permit hereunder shall have any property right in any document or paper evidencing the granting of such license or permit and issued by the licensing authorities, and said authorities, upon the expiration, suspension, revocation, cancellation or forfeiture of such a license or permit shall be entitled upon demand to the immediate possession thereof."

To the extent the plaintiffs' claims are based upon procedural due process deprivations, the plaintiffs have failed to assert there were inadequate state remedies available to address the alleged deprivations.  They are therefore entitled to summary judgment as to count IV of the complaint (§ 1983 claim).

**4. As to Count VIII, under the Fourteenth Amendment of the United States Constitution, alleged deprivations are adequately remedied by 42 U.S.C. § § 1981 and 1983 Claims.**

Summary judgment should enter for the defendants on Count VIII of the Plaintiffs' complaint brought under the Fourteenth Amendment of the United States Constitution, because this alleged violation is adequately remedied by claims under 42 U.S.C. §§ 1981 and 1983.  "Precedents do not support recognizing a remedy directly under the amendments to the United States Constitution, *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), when relief is available under § 1983."  *Ramos v. Gallo*, 596 F.Supp. 833, 839 (D.Mass. 1984).  Thus, because the United States Congress has created statutory basis for the claims asserted by plaintiffs under 42 U.S.C. §§ 1981 and 1983, this court should not afford the plaintiffs a remedy directly under the Fourteenth Amendment and should enter summary judgment in favor of the defendants on count VIII of the complaint.

**5. The Plaintiffs' claims under 18 U.S.C. §§ 1981 & 1983 lack sufficient facts  to rise to the level to meet the standard necessary to proceed with a claim for a violation of substantive due process or equal protection.**

The standard that the plaintiffs must meet to succeed on claims for violations of substantive due process and equal protection is extremely high.  Assuming the facts in the light most favorable to the Plaintiffs, this case does not rise to a level of "truly horrendous," "conscience shocking," or "an egregious abuse of power."  The evidence

demonstrates a reasoned, well-substantiated review and decision by the Board, which was upheld by the ABCC, a party whom the plaintiffs have not claimed civil rights violation. Therefore the discretion of the Board should not be disrupted by the federal court and summary judgment should be entered for the defendants on counts IV and VII for alleged violations of 42 U.S.C. §§ 1983 and 1981.

### A.  Substantive Due Process

"The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of 'life, liberty, or property, without due process of law.'  U.S. Const. amend. XIV, § 1.  This guarantee has both substantive and procedural components.  The substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions.  *Daniels v. Williams,* 474 U.S. 327, 331 (1986).  The substantive due process guarantee does not, however, serve as a means of constitutionalizing tort law so as to 'impos[e] liability whenever someone cloaked with state authority causes harm.'  *County of Sacramento v. Lewis,* 523 U.S. 833, 848 (1998)." *Pagan*, 448 F. 3d at 32.

"Where, as here, a plaintiff substantive due process claim challenges the specific acts of a state officer (Mr. Sygnator), the plaintiffs must show *both* that the acts were so egregious as to shock the conscience *and* that they were deprived of a protected interest in life, liberty, or property.  *See Rivera v. Rhode Island,* 402 F.3d 27, 34 (1st Cir.2005) (stating that '[i]t is not enough to claim the governmental action shocked the conscience' but that a plaintiff must also show a deprivation of a protected interest). Consequently, 'conscience-shocking conduct is an indispensable element of a substantive due process

challenge to executive action.'  *DePoutot v. Raffaelly,* 424 F.3d 112, 118 n. 4 (1st Cir.2005)." *Pagan,* 448 F. 3d at 32.  The *Pagan* court further stated:

> There is no scientifically precise formula for determining whether executive action is-or is not-sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment …. We know, for example, that in order to shock the conscience, conduct must at the very least be "extreme and egregious," ... or, put another way, "truly outrageous, uncivilized, and intolerable," *Hasenfus v. LaJeunesse,* 175 F.3d 68, 72 (1st Cir.1999). We also know that "[m]ere violations of state law, even violations resulting from bad faith," do not invariably amount to conscience-shocking behavior.  *DePoutot,* 424 F.3d at 119. Rather, conscience-shocking behavior "must be stunning." *Amsden,* 904 F.2d at 754 n. 5.

*Pagan,* 448 F. 3d at 32.

Here the plaintiffs contend that Mr. Sygnator transgressed their substantive due process rights when he exerted undue influence by subjecting the plaintiffs to "more scrutiny and harsher treatment," to obtain "information…for the purpose of denying the Plaintiffs' liquor license transfer request".  See complaint pars 18 and 19.  Even if true the gathering and use of *uncontroverted* evidence or "information" for a liquor license transfer request hearing is not abuse of power so raw as to shock the conscience.

The *Pagan* court further noted:

> We have held, with a regularity bordering on the monotonous, that the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decision makers, whether those decisions are right or wrong.  *See, e.g., Collins v. Nuzzo,* 244 F.3d 246, 251 (1st Cir.2001);  *Nestor Colon,* 964 F.2d at 45;  *Amsden,* 904 F.2d at 757-58;  *Creative Env'ts, Inc. v. Estabrook,* 680 F.2d 822, 829 (1st Cir.1982).  While we have "left the door slightly ajar for ... truly horrendous situations," *Nestor Colon,* 964 F.2d at 45, any permit or license denial, no matter how unattractive, that falls short of being "truly horrendous" is unlikely to qualify as conscience-shocking.

This standard is rigorous but necessary. A lesser standard would run the unacceptable risk of "insinuat[ing] the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals," *id.,* and would dash "any hope of maintaining a meaningful separation between federal and state jurisdiction," *Creative Env'ts,* 680 F.2d at 831.

*Pagan,* 448 F. 3d at 33.

"Where a license or permit denial is involved, the class of cases which meets the constitutional threshold is narrowly limited (citations omitted). In *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32 (1st Cir.1992), First Circuit Court held that the denial of a land use permit, even if arbitrary, did not constitute a substantive due process violation unless it was a 'truly horrendous situation[ ].' *Id.* at 45. Similarly, …[the First Circuit] rejected a plaintiff's substantive due process claim where a regulatory board revoked his surveyor's license, allegedly due to the chairman's animus toward him, finding that the plaintiff failed to show that the treatment was 'shocking or violative of universal standards of decency.' *Amsden v. Moran,* 904 F.2d 748, 757 (1st Cir.1990)." *Collins v. Nuzzo,* 244 F.3d 246, 250-251 (1st Cir.2001)

In this case, the plaintiffs' claims of heightened scrutiny and harsher treatment, even if true, do not support a constitutional claim because this conduct did not cross the high substantive due process threshold.

### B. Equal Protection

"The equal protection guarantee of the Fourteenth Amendment prohibits the state from 'deny[ing] any person within its jurisdiction the equal protection of the laws.' U.S. Const. amend. XIV, § 1. With reference to a governmental action, this language has been interpreted to mean that 'all persons similarly situated should be treated alike.' *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). Its protections extend

to both legislative and executive conduct.  *See Sioux City Bridge Co. v. Dakota County,*

*260 U.S. 441, 445 (1923).*"  *Pagan v.* 448 F. 3d at 34-35 (2006).

> Where applicable state law vests the decision maker with discretionary authority to award or withhold a state benefit, a plaintiff who grounds an equal protection claim on the denial of that benefit faces a steep uphill climb.  *See PFZ Props., Inc. v. Rodriguez,* 928 F.2d 28, 32 (1st Cir.1991) (explaining that a denied applicant's allegations of differential treatment resulting from the decision maker's illegitimate motives do not normally amount to an equal protection violation).  In benefit-denial cases, a plaintiff can succeed only if he shows that (i) he was treated differently than other similarly situated supplicants and (ii) the differential treatment resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness.  *See, e.g., id.; Creative Env'ts,* 680 F.2d at 832 n. 9.  Even an arbitrary, bad-faith denial of a benefit in derogation of state law, without more, will not cross the constitutional threshold needed for an equal protection claim.  *Baker v. Coxe,* 230 F.3d 470, 474 (1st Cir.2000).
>
> *Pagan v.* 448 F. 3d at 34-35 (2006).

In this case, the plaintiffs have not identified similarly situated persons who were

treated differently therefore the plaintiffs have failed to carry their burden.  *See*

*Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992) (suggesting that to state a viable equal

protection claim, a plaintiff must show that it sustained disparate treatment

compared to a person that is alike in "all relevant respects").  "This is a high

hurdle, but its height makes eminently good sense. Otherwise, a disappointed

applicant for a state or local benefit could manufacture a constitutional claim by

the simple expedient of alleging differential treatment. Were that the rule, the

correctness of every state or local benefit denial would become a federal case."

*Pagan v.* 448 F. 3d at 34-35 (2006).  The First Circuit previously expressed this

sentiment in *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32,

44-45 (1st Cir. 1992) (Summary judgment entered for defendants because as a

matter of law, the facts did not rise to the level necessary to preempt zoning

board's judgment.), stating that it is important that the court limit jurisdiction,

because:

> If disgruntled permit applicants could create constitutional claims
> merely by alleging that they were treated differently from a
> similarly situated applicant, the correctness of virtually any state
> permit denial would become subject to litigation in federal court.
> Limiting such claims is essential to prevent federal courts from
> turning into "zoning board[s] of appeals".
> *Id.*

The court in *Nestor Colon Median & Sucesores* also noted that the same test

should be applied to the "egregious abuse of power" test to judge claims alleging a

violation of Equal rights under law brought under 42 U.S.C. § 1981:

> We hold later in this opinion that defendants' alleged conduct was
> not so egregious as to constitute a substantive due process
> violation. For the same reasons, we find no "egregious abuse of
> power" for equal protection purposes, assuming without deciding
> that such abuses might, by themselves, constitute equal protection
> violations.
> *Nestor Colon Medina & Sucesores, Inc.,* 964 F.2d at 44.

In this case, the facts demonstrate, without objection, there were legitimate

considerations which justified the denial of the liquor license transfer request.  These

considerations included prior conduct and prior violations of the licensee; the size of the

proposed operation; views of the inhabitants of the locality and the nearby property

management; view of the Business Improvement District; Planning Board's

recommendation to deny the transfer; the likelihood of increased traffic congestion if the

transfer was allowed; the likelihood of increased noise and boisterousness from

customers leaving at closing hour if the transfer was allowed; the type of operation (GOP

(alcohol-only) License); and the number of existing dispensaries within 500 and 1000

feet (15 and 35 respectively).  *See* Findings of the Board of License Commissioners

relative to the March 10, 2005 hearing.  These enumerated considerations demonstrate a

reasoned, just decision by the Board.  *Compare*, *Townsend v Exxon Co., U.S.A.* 420 F.

Supp 189, 194 (1976) [Where a refusal to rehire is based on legitimate business

considerations, not on racial grounds, there is no violation of section 1981 ], *see also*

*Cooper v. Allen*, 493 F.2d 765 (5th Cir. 1974).

Further, the Board's decision was appealed to the ABCC, a neutral third party

created by statute.  *See M.G.L.* 138 *et seq*.  After a full hearing, the ABCC concurred with

the Board.

Assuming the facts as the Plaintiff would claim, that is, off hand remarks about

hip-hop clubs and an unsubstantiated claim that this license was treated, in its license

review, more suspiciously than others, the case does still not rise to a level of "truly

horrendous," "conscience shocking," or "an egregious abuse of power."  The

overwhelming evidence points to a reasoned, well-substantiated review and decision by

the Board, which was upheld by the ABCC, a party whom the plaintiffs have not claimed

civil rights violation. Because of the high standard, the discretion of the Board should not

be disrupted by the federal court and summary judgment should be entered for the

defendants on counts IV and VII for alleged violations of 42 U.S.C. §§ 1983 and 1981.

### 5. Defendant Peter Sygnator is entitled to Qualified Immunity

"Qualified immunity is a judge-made doctrine created to limit the exposure of

public officials to damages actions, thereby fostering the effective performance of

discretionary functions in the public sector. *Harlow v. Fitzgerald,* 457 U.S. 800, 807

(1982).  This doctrine protects all but 'the plainly incompetent [and] those who

knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  As that

exclusion has been interpreted, the doctrine does not shield public officials who, from an

objective standpoint, should have known that their conduct was unlawful.  *Davis v.*

*Scherer,* 468 U.S. 183, 193 (1984);  *Surprenant v. Rivas,* 424 F.3d 5, 14 (1st Cir.2005)."

*Pagan v. Calderon*, 448 F. 3d 16, 31 (2006) (Corporate plaintiff's claims of political

discrimination in licensing as substantive due process and equal protection violations

disposed of on summary judgment for failure state viable constitutional claims.)

The *Pagan* court outlined the three-step algorithm for the determination of

whether a state actor is entitled to qualified immunity.  *Id.* at 31 *citing*:

> In sequential order, "[w]e consider (i) whether the
> plaintiff's allegations, if true, establish a constitutional
> violation; (ii) whether the constitutional right at issue was
> clearly established at the time of the putative violation; and
> (iii) whether a reasonable officer, situated similarly to the
> defendant, would have understood the challenged act or
> omission to contravene the discerned constitutional right."
> *Limone,* 372 F.3d at 44 (1st Cir.2004).

The plaintiffs charge that the defendants, acting under color of law, as the liquor

licensing authority in the City of Springfield, violated their substantive due process and

equal protection rights when they allegedly treated the plaintiffs with disparate treatment

and racial animus to "successfully prevent the plaintiffs from transferring their liquor

license…"  See complaint par 25.  For reasons stated above, there is no indication that

Sygnator had violated any clearly established constitutional right asserted by plaintiffs at

the time of the putative violation and the plaintiffs have failed to allege facts which are

adequate to overcome the claim of qualified immunity.

**6. Defendant Peter Sygnator in his individual capacity is entitled to absolute immunity**
**under the doctrine of Quasi-Judicial Immunity**

Peter Sygnator, in his individual capacity is entitled to "quasi judicial immunity" as chairman of the Board of License Commissioners, and is therefore entitled to absolute immunity.  Most government officials are entitled to only qualified immunity, but officials performing judicial, legislative, or prosecutorial functions have been afforded absolute immunity. If absolute immunity attaches, it applies however erroneous the act or injurious its consequences. *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985) (citation omitted). Furthermore, if absolute immunity attaches to the acts, the motives of the official do not matter and allegations of improper motive cannot defeat the claim of immunity. Id. The Supreme Court has adopted a "functional" approach to absolute immunity and the question of whether a particular individual will have absolute immunity will depend on the function performed by that official in a particular context. *Forrester v. White*, 484 U.S. 219, 228-29 (1988) (judge has absolute immunity only when acting in judicial, as opposed to administrative, capacity). Judges have absolute immunity from civil rights suits so long as the judges act within their judicial capacity. See *Hughes v. Long*, 242 F.3d 121, 125 (3rd Cir.2001) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) and *Pierson v. Ray*, 386 U.S. 547, 553-55 (1967)). Here, Sygnator acted as chairman to to Springfield License Board. Compare *Butz v. Economou*, 438 U.S. 478, 511-17, 98 S.Ct. 2894, 2913-16, 57 L.Ed.2d 895 (1977). See generally *Cleavinger v. Saxner*, 474 U.S. 193, 199-202, 106 S.Ct. 496, 499-501, 88 L.Ed.2d 507 (1985) (reviewing doctrine of quasi-judicial immunity).

Pursuant to *M.G.L.* c. 138 sec 23 the "provisions for the issue of licenses and permits hereunder …are enacted with a view only to serve the public need and in such a manner as to protect the common good and, to that end, to provide, in the opinion of the

licensing authorities, an adequate number of places at which the public may obtain, in the manner and for the kind of use indicated, the different sorts of beverages for the sale of which provision is made." *See also Ballarin, Inc. v. Licensing Board of Boston,* 49 Mass. App. Ct. 506, 510-511 (2000). In considering liquor license transfer applications and applying the standards set forth in *M.G.L.* c. 138 § 23 and *Ballarin, Inc*, the Board, on which Mr. Sygnator is a member, acts in a quasi judicial capacity within the scope of its authority. *See, Jaffarian v. Murphy*, 280 Mass 402 (1932) [Mayor as entertainment license issuing authority "did not act in good faith but acted most arbitrarily and capriciously in refusing to grant the license." Mayor's conduct described as "a tyrannical and unlawful abuse of power." Despite such conduct the mayor was afforded Quasi-Judicial Immunity by the court. The plaintiff's remedy was a writ of mandamus rather than tort liability. *Id* at 406-407. ]

In this case the Board conducted a hearing on the Plaintiff SSE's application for license transfer. The plaintiffs were represented by counsel (see Findings of Board re March 10, 2005 Hearing); written findings were issued; and the plaintiffs were afforded an administrative appeal (*M.G.L.* 138 §§ 23 and 67) and judicial appeal by writ of certiorari (*M.G.L.* 249 § 4.). There were adequate due process safeguards in place under Massachusetts law to protect against unconstitutional conduct without resorting tort liability. Therefore this court should find the Defendant Sygnator immune from liability under the doctrine of Quasi-Judicial Immunity. *See Bettencourt .v Board of Registration of Medicine of Commonwealth of Massachusetts*, 904 F.2d C.A.1 (Mass) (1990).

***7. Defendant Peter Sygnator in his official capacity and the City are entitled to judgment due to the lack of any underlying civil rights violation.***

Official capacity suits, in contrast "generally represent another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. See *Kentucky v. Graham*, 473 U.S. 159 (1985). As such, any claim against Sygntor in his official capacity is akin to a claim against the City.

A municipality may not be liable for an unconstitutional custom or policy where no such liability has been imposed upon the individuals alleged to have perpetrated the actual constitutional injury. The Supreme Court addressed a similar situation in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)(per curiam). In Heller, an individual sued the City of Los Angeles, individual members of the Los Angeles Police Commission and two Los Angeles police officers alleging violations of § 1983. *Id.* at 797. In that case, the plaintiff sued a police officer for making an arrest with excessive force and without probable cause; he also sued the officer's employer, the City of Los Angeles, for promulgating a constitutionally deficient policy in regard to police officers' use of force. The jury found for the officer but against the municipality. The district court entered judgment for the gendarme but overrode the second part of the jury's verdict and dismissed the claim against the city. The court of appeals reversed the order of dismissal but did not disturb the judgment that had been entered in the officer's favor. See *Heller v. Bushey*, 759 F.2d 1371, 1376 (9th Cir.1985). The city then appealed. The Supreme Court reinstated the dismissal, declaring that it had never authorized the award of damages against a municipal corporation based on the actions of one of its officers when in fact the

62450                                           - 19 -

jury has concluded that the officer inflicted no constitutional harm.  If a person has

suffered no constitutional injury at the hands of the individual police officer, the fact that

the departmental regulations might have authorized the use of constitutionally excessive

force is quite beside the point.  *Heller*, 475 U.S. at 799. The Court of Appeals for the

First Circuit endorsed the *Heller* decision in *Evans v. Avery*, 100 F.3d 1033, 1039 (1st

Cir.1996), cert. denied 520 U.S. 1210, 117 (1997). The fact that Sygnator did not violate

Plaintiffs' constitutional rights means that the City is not liable to her under section 1983.


## CONCLUSION

For the above stated reasons the defendants move this court for summary

judgment in their favor on all counts.

**THE DEFENDANT**
**CITY OF SPRINGFIELD,**

/s/   John T. Liebel
Digitally signed by John T. Liebel
DN: cn=John T. Liebel, c=US, o=City of Springfield, ou=Law Department
Date: 2009.02.20 16:11:45 -05'00'

By, _____
John T. Liebel, Esq., BBO#299660
Chief of Litigation
City of Springfield Law Department
36 Court Street, Room 210
Springfield, MA 01103
(413) 787-6085
Fax: (413) 787-6173

**THE DEFENDANT**
**PETER SYGNATOR,**

/s/   Michael E. Mulcahy
Digitally signed by Michael E. Mulcahy
DN: cn=Michael E. Mulcahy, c=US, o=City of Springfield
Date: 2009.02.20 16:12:03 -05'00'

By, _____
Michael E. Mulcahy, Esq.,
BBO # 561824
City of Springfield Law Dept.
36 Court Street, Room 210
Springfield, MA 01103
(413)787-6085
Fax: (413) 787-6173


## CERTIFICATE OF SERVICE

To: Harold Resnic, Esq.
Law Offices of Harold I. Resnic
95 State Street,
Springfield, MA  01103

I, Michael E. Mulcahy, Esq., hereby certify that I caused the within document to be filed within the time ordered by this court and further that I caused it to be served on all parties by delivering a copy to the above named on or before February 20, 2009.

/s/   Michael E. Mulcahy
Digitally signed by Michael E. Mulcahy
DN: cn=Michael E. Mulcahy, c=US, o=City of Springfield
Date: 2009.02.20 16:12:20 -05'00'

Michael E. Mulcahy

62450